IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| GARY RONALD SLEZAK, | ) | C/A No. 4:07-661-RBH-TER |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| STANLEY BURT, WARDEN | ) | |
| OF LIEBER CORRECTIONAL | ) | |
| INSTITUTION, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

Petitioner, Gary Ronald Slezak ("petitioner/Slezak"), a pro se prisoner, seeks habeas relief pursuant to 28 U.S.C. 2254. This matter is before the Court on the respondent's motion for summary judgment. (Document # 32.)[1]

Petitioner filed this petition for a writ of habeas corpus on March 2, 2007.[2] On August 31, 2007, respondent filed a motion for summary judgment, along with supporting memorandum and exhibits. The undersigned issued an order filed September 6, 2007, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising petitioner of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. On September 28, 2007,

---

[1]This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC. Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

[2]This date reflects that the petition was date stamped as received on March 2, 2007, at the Lieber Correction Institution mailroom (Pet. Ex. 2.) Houston v. Lack, 487 U.S. 266 (1988)(holding prisoner's pleading is considered filed when filed with prison authorities for forwarding to the district court).

petitioner filed a response to respondent's motion for summary judgment and his own motion for summary judgment.

## I.  FACTS/PROCEDURAL HISTORY

On January 11, 1981, the petitioner entered a grocery store in Charleston, South Carolina, and robbed two people at gunpoint.  He then shot both people multiple times killing them. The petitioner was charged with two counts of murder and armed robbery.  The petitioner eventually pled guilty to two counts of murder and one count of armed robbery and was sentenced to consecutive terms of life imprisonment for each murder, as well as a twenty-year sentence, which was to be served concurrently, for the armed robbery.

At the time of the petitioner's conviction, a person receiving a life sentence for murder was eligible for parole after the service of twenty years. Therefore, the petitioner became eligible for parole in August 2000.  On October 4, 2000, the petitioner had his initial parole hearing after which he was denied parole.  Since then, the petitioner has had six parole hearings and each time he has been denied parole.  The petitioner's most recent parole hearing was held on February 7, 2007. Again, the Parole Board denied the petitioner parole for the following reasons:

    1. Nature and seriousness of the current offense.

    2. Indication of violence in this or previous offense.

    3. Use of deadly weapon in this or previous offense.

    4. Prior criminal record indicates poor community adjustment.

On March 6, 2007, the petitioner filed this petition for habeas relief.

## II. PETITIONER'S GROUND FOR RELIEF[3]

The petitioner has raised five grounds for relief in an attachment to his habeas petition, quoted verbatim:

> **Ground One:** The Parole Board's previous and most recent February 7, 2007 decisions denying Mr. Slezak Parole and the Administrative Law Court's adjudication of Petitioners ex post facto claim resulted in a decision that was contrary to, or involved and unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.  Petition asserts that the Parole Board's denial of parole violated the U.S. Constitution's prohibition against the ex post facto application of penal laws.  Petitioner asserts that the Department of Corrections denial of work credits violated his plea agreement and the U.S. Constitutions's prohibition against the ex post facto application of penal laws and due process and separation of powers clauses of the Fifth and Fourteenth Amendments.  See U.S. Const., Art. I §§ 9, 10; Garner v. Jones, 529 U.S. 244, 249 (2000).
>
> **Ground Two:** The Parole Board s previous and most recent February 7, 2007 denial of parole and the South Carolina Administrative Law Court's adjudication of Petitioner's ex post facto claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States and were based  upon an unreasonable determination of the facts.  Petitioner asserts that the Parole Board's decision to deny him parole was an abuse of discretion, arbitrary and capricious, violating the U.S. Constitutions due process clause and prohibition against the ex post facto application of penal laws. See U.S. Const. Art. I §§ 9, 10; Garner v. Jones, 529 U.S. 244-249 (2000).
>
> **Ground Three:** The Parole Board's denial of parole decisions of his February 7, 2007 and previous parole review hearing were contrary to or involved an unreasonable application of, clearly established federal law.  Not only that, but the Parole Board decision's to deny parole, were based upon an unreasonable determination of facts.  The Due Process Clause of the U.S. Constitution requires the

---

[3] In Slezak v. Burt, C/A No. 4:03-3797-RBH, the petitioner raised the same issues regarding parole in relation to the denial of parole prior to 2005.  However, the petitioner withdrew his grounds relating to the denial of his parole.  The respondent contends, notwithstanding the withdrawal of the claims, the earlier case should render the present case successive.  The undersigned declines to treat the petitioner's present claims, which were not ruled on the merits, as successive.

3

> Parole Board's decision regarding parole have a factual basis. Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1 (1979);  *See also* Scott v. Illinois Parole and Pardon Board, 669 F.2d 1185 (7th Cir.), *cert. denied*, 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982).
>
> **Ground Four:** The Parole Board's decision and denial of Parole of Mr. Slezak most recent February 7, 2007 parole review and previous parole reviews was contrary to, or involved an unreasonable application of, clearly established federal law, and was based upon an unreasonable determination of the facts. The Parole Board's actions flatly violate the decision in Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1 (1979) and Mickens-Thomas v. Vaughn, 321 F.3d 374, in that the Parole Board based its denial of parole decision on restrospective amendments of S.C. Code Ann. 24-21-640 (1981) and the attached parole criteria policy. According to Greenholtz, South Carolina's parole system, at the time of petitioner's indictment, has created a cognizable liberty interest in release on parole, and is deserving of procedural due process protection.  Accord Board of Pardons v. Allen, 482 U.S. 369, 377, 381 (1987) See also Scott v. Illinois Parole and Pardon Board, 669 F.2d 1185 (7th Cir.), cert. denied 459 U.S. 1048, 103 S.Ct. 468, 74 L.Ed.2d 617 (1982). As such, any parole decision must be based on a finding of good cause supported by the evidence.
>
> In Mr. Slezak's case - as in Mickens-Thomas v. Vaughn, 321 F.3rd 374 - the Parole Board applied restrospective policy toward Thomas to evaluate suitability for parole, which is improper. Indeed, the Third Circuit recently applied the Mickens-Thomas v. Vaughn, 355 F.3d 294 (3rd Cir. 2003) decision to release a Mr. Mickens.
>
> **Ground Five:** Petitioner was prevented from timely filing because of unlawful governmental interference with Petitioner's access to the courts. This violated Petitioner's right to due process as guaranteed by the United States Constitution, and the First and Fourteenth amendments thereto. Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174 (1996).

(Pet. Attach. 1-5.)

### III. DISCUSSION AS TO PROCEDURAL BAR

A. Procedural Bar

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories

rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

### 1. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C. § 2254 , which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

> (b) (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B) (I) there is either an absence of available State corrective process; or
>
> (ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.
>
> (2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
>
> (3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is

clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court. The United States Supreme Court has consistently enforced the exhaustion requirement.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977); Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983).

Relief under § 2254 may only be pursued in this Court after a petitioner has exhausted his state court remedies. *See* 28 U.S.C. § 2254(b); Braden v. 30th Judicial Circuit Court, 410 U.S. 484, 490-491 (1973). The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." Coleman v. Thompson, 501 U.S. 722, 731 (1991).

A petitioner is required to present fully and squarely to the state courts the same issues upon which he would rely in this Court. In Matthews v. Evatt, 105 F3d. 907 (4th Cir. 1997), the Fourth held that "[t]o satisfy the exhaustion requirement, a habeas petitioner must fairly present his claim to the state's highest court. The burden of proving that a claim has been exhausted lies with the petitioner." 105 F 3d at 910-911(citations omitted). If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. Richardson v. Turner, 716 F.2d 1059 (4th Cir.1983). When the petition for habeas

relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977); Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983).

### 2. Procedural bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts, Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings, if a state has procedural rules which bar its courts from considering claims not raised in a timely fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. State procedural rules promote . . . not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the

defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case. Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state procedural bar, . . . the exercise of that power ordinarily is inappropriate unless the defendant succeeds in showing both "cause" for noncompliance with the state rule and "actual prejudice" resulting from the alleged constitutional violation. Smith v. Murray, supra (*quoting* Wainwright v. Sykes, 433 U .S. at 84 (1977)); *see also* Engle v. Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. Murray v. Carrier, 477 U.S. 478, 496 (1986).

### 3. Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. Matthews v. Evatt, 105 F.3d 907 (4th Cir.1997)(*citing* Coleman v. Thompson, 501 U.S. 722, 735 n. 1 (1991); Teague v. Lane, 489 U.S. 288,297-98 (1989); and George v. Angelone, 100 F.3d 353,363 (4th Cir. 1996).

4. Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. Granberry v. Greer, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, Coleman v. Thompson, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. Murray v. Carrier, 477 U.S. 478 (1986). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* at 478.

Absent a showing of "cause," the court is not required to consider "actual prejudice." Turner v. Jabe, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. Murray v. Carrier, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. United States v. Frady, 456 U.S. 152 (1982).

In Kornahrens v. Evatt, 66 F.3d 1350 (4th Cir. 1995), the Fourth Circuit Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. *See* Karsten v. Kaiser Foundation Health Plan, 36 F.3d 8, 11 (4th Cir. 1993). Therefore, once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

9

## IV. DISCUSSION

### A. Exhaustion

As noted above, exhaustion of state remedies is required prior to initiation of a federal habeas corpus petition unless it is waived by the state. 28 U.S.C. § 2254; Preiser v. Rodriguez, 411 U.S. 475 (1973). *See also* Neal v. Goord, 267 F.3d 116, 123 (2nd Cir. 2001)(holding that "allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirements, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court."); Jackson v. Dist. of Columbia, 254 F.3d 262, 268-69 (D.C.Cir. 2001)(rejecting the argument that § 1997e(a) "permits suit to be filed so long as administrative remedies are exhausted before trial"); Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)(holding a "prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit."); Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir.1999) (holding "[a]n inmate incarcerated in a state prison, thus, must first comply with the grievance procedures established by the state department of corrections before filing a federal lawsuit under section 1983."

Originally, the respondent contended the petitioner had filed a "mixed" petition, which pursuant to Rose v. Lundy, 455 U.S. 509 (1982), must be dismissed. (Resp't's Mem. Supp. Summ. J. Mot.) At the time the respondent made that argument, the petitioner had not exhausted his state remedies with respect to Ground One regarding his earned work credits because he had an appeal pending in the South Carolina Court of Appeals. (Pet. at 2.) *See, e.g.,* Wilder v. Catoe, 2002 WL 32079235, *4 (D.S.C. 2002)("since Petitioner himself concedes in his Petition that his state action is currently pending before the state court, abstention by this Court is proper"). However, on January 2, 2008, the South Carolina Court of Appeals denied the petitioner's appeal. Slezak v. State, Op.

No. 2008-UP-005 (S.C. Ct. App. filed January 2, 2008). The petitioner did not file an appeal from this decision and the remittitur was sent down January 18, 2008. (Resp't's Mem. Ex. D.) Thus, the petitioner's case regarding his earned work credits is no longer pending in the state courts.

The respondent now contends that the claim regarding earned work credit should be dismissed because the petitioner failed to appeal the South Carolina Court of Appeals' decision to the South Carolina Supreme Court. (Resp't's Mem. at 3 - Docket Entry # 49.) However, "a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error" State v. McKennedy, 348 S.C. 270, 559 S.E.2d 850, 852-54 (S.C. 2002). Therefore, despite the petitioner's failure to file an appeal to the South Carolina Supreme Court, the undersigned finds this claim is now exhausted. Accordingly, the merits of the petitioner's claims are discussed below.

## B.  Merits

**Ground One**

In Ground One, the petitioner alleges that he was denied earned work credits which affected his initial parole eligibility date which occurred in 2000. He contends he should have had his initial parole in July 2000, and it was not held until October 2000. (Pet. Attach. at 3; Pet'r's Mem. Opp. Summ. J. Mot. at 2.) As noted above, the Court of Appeals recently denied the petitioner's appeal related to this issue. Slezak v. State, Op. No. 2008-UP-005 (S.C. Ct. App. filed January 2, 2008). The Court found the issue moot stating that the petitioner's:

> initial parole date as determined by the Department, has long since come and gone. Moreover, he was denied parole on that date and, apparently, since that time; consequently, the question of whether he should have received a parole hearing at an

>earlier date because of earned work credits to which he may have been entitled is of no moment. He proved not to be a candidate for parole in any case. For us to decide the question of whether the Department wrongfully denied Slezak earned work credits would accomplish nothing and would constitute merely an advisory opinion on our part.

(*Id*. at *2.) His only claim regarding the denial of earned work credits is that his initial parole review was delayed. As the Court of Appeals noted, the petitioner's initial parole hearing date passed several years ago and the petitioner has had several parole hearing since that time. The Court of Appeals correctly found that whether the petitioner was entitled to an earlier initial parole date is now moot. Accordingly, the undersigned finds that the state court's decision is not contrary to, nor an unreasonable application, of clearly established federal law and this claim should be dismissed.

**Grounds Two-Four**

In Grounds Two-Four, the petitioner alleges the defendants failed to follow proper due process procedures during his parole hearing that was held on February 7, 2007. Specifically, he alleges that on the day of the parole hearing, he was told the hearing would be held at another correctional institution and he was not allowed to notify his witnesses of the change in location. (Pet'r's Mem. Opp. Summ. J. at 2.) He also alleges the hearing was conducted through closed circuit television and he was not allowed to hear or rebut any witnesses. (*Id*.) Finally, the petitioner alleges that "his most recent review hearing and the misinformation or misadvice of trial counsel concerning parole criteria and the amendment of the parole criteria raise additional claims of violation of petitioner plea agreement, involuntary plea and ineffective counsel not previously available until the February 7, 2007 parole hearing and procedures of the respondent utilized to deny him parole." (Id. at 6.)

First, the undersigned notes that the Constitution itself does not create a protected liberty interest in the expectation of early release on parole. Greenholtz v. Inmates of Nebraska Penal & Corr. Complex, 442 U.S. 1, 7 (1979); *see also* Jago v. Van Curen, 454 U.S. 14, 18-20 (1981)(mutually explicit understanding that inmate would be paroled does not create liberty interest). "There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." Greenholtz, 442 U.S. at 7. "It is therefore axiomatic that because . . . prisoners have no protected liberty interest in parole they cannot mount a challenge against a state parole review procedure on procedural (or substantive) Due Process grounds." Johnson v. Rodriguez, 110 F.3d 299, 308 (5th Cir.1997). Because there is no constitutional right, federal courts "recognize due process rights in an inmate only where the state has created a 'legitimate claim of entitlement' to some aspect of parole." Vann v. Angelone, 73 F.3d 519, 522 (4th Cir. 1996); Gaston v. Taylor, 946 F.2d 340, 344 (4th Cir.1991). The South Carolina Supreme Court has found that "[a]lthough this provision [§ 24-21-640] creates a liberty interest in parole eligibility, it does not create a liberty interest in parole." Furtick v. South Carolina Dep't of Probation, Parole & Pardon Services, 576 S.E.2d 146, 149 (S.C. 2002).

In South Carolina, an inmate has a right of review by the ALC after a final decision that he is ineligible for parole, but a parole-eligible inmate does not have the same right of review after a decision denying parole. In other words, the petitioner has failed to state a cause of action for relief because inmates have no protected right to parole, only the right to a parole hearing which the petitioner has had seven times. Furtick, 576 S.E.2d 146. This distinction stems from the fact that parole is a privilege, not a right. Sullivan v. South Carolina Dep't of Corr., 586 S.E.2d 124, 127 n.4

(S.C. 2003).[4]  A claim regarding the failure to grant parole, as opposed to a claim that an inmate has been declared permanently ineligible for parole, is not reviewable. *Id.*  The ALC has jurisdiction to review parole matters only when they implicate a liberty interest, such as an ex post facto claim. Steele v. Benjamin, 606 S.E.2d 499, 503 (S.C. Ct. App. 2004).

Further, under the analysis of liberty interests set out by the Supreme Court in Sandin v. Conner, 515 U.S. 472 (1995), the petitioner has also failed to show that he has a liberty interest in parole or parole consideration. The application of the statute at issue constitutes neither a restraint on the petitioner's freedom "exceeding the sentence in such an unexpected manner as to give rise to protection of the Due Process Clause by its own force" nor a restraint that imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484.

Here, the petitioner received due process during his parole hearing.  There has been no decision that the petitioner is parole ineligible, only that he has been denied parole at his annual parole hearing.  Even where this court has found that a parole statute establishes a liberty interest, we have held that inmates are entitled to no more than minimal procedure. *At most*, we have held that parole authorities must "furnish to the prisoner a statement of its reasons for denial of parole." Franklin v. Shields, 569 F.2d 784 (4th Cir. 1977)(emphasis added); *see also* Bloodgood v. Garraghty, 783 F.2d 470, 473 (4th Cir.1986).  In sum, whether or not a liberty interest exists, federal courts must defer to state agencies applying state laws and thus their oversight of state parole proceedings has been extremely limited.  Vann v. Angelone, 73 F.3d. at 522.

---

[4]The parole board is, however, required to review an inmate's case every twelve months after a negative parole determination.  S.C. Code Ann. § 24-21-620.

Additionally, the petitioner has not established any ex post facto violation stemming from the amendment of S.C. Code Ann. § 24-21-640. In 1981 when the petitioner pled guilty, § 24-21-640 provided, in pertinent part,:

> The Probation, Parole and Pardon Board shall carefully consider the record of the prisoner . . ., and no such prisoner shall be paroled until it shall appear to the satisfaction of the Board that the prisoner has shown a disposition to reform; that in the future he will probably obey the law and lead a correct life; that by his conduct he has merited a lessening of the rigors of his imprisonment; that the interests of society will not be impaired thereby; and that suitable employment has been secured for him.

In 1986, the statute was amended to read:

> The board must carefully consider the record of the prisoner before, during and after imprisonment, and no such prisoner may be paroled until it appears to the satisfaction of the board: that the prisoner has shown a disposition to reform; that, in the future he will probably obey the law and lead a correct life; that by his conduct he has merited a lessening of the rigors of his imprisonment; that the interest of society will not be impaired thereby; and, that suitable employment has been secured for him.

"An ex post facto violation occurs when a change in the law retroactively alters the definition of a crime or increases the punishment for a crime." Jernigan v. State, 531 S.E.2d 507, 509 ( S.C. 2000). In Jernigan, the South Carolina Supreme Court held that the retroactive application of a state statute changing reviews for parole eligibility for violent offenders from annual to biannual constituted an ex post facto violation. *Id.* at 511-12. The court noted, "The law existing at the time of the offense determines whether an increase of punishment constitutes an ex post facto violation." *Id*. at 509 n. 3. *See also* Steele v. Benjamin, 606 S.E.2d 499, 503 (S.C. Ct. App. 2004)(inmate's complaint that the biannual parole review constituted an ex post facto violation, potentially lengthening the period of his incarceration by one year, implicated a liberty interest.").

The first amendment made to § 24-21-640 was merely a stylistic change in the language from "shall carefully consider" to "must carefully consider." Second, in the original statute the language was that "a person shall be paroled" if he meets certain criteria. The amendment changed the language to provide that "no such prisoner may be paroled" unless he meets certain criteria. These amendments did not change the criteria listed. As there has been no change in the substance of the statute from the time when the petitioner's committed his offense, there is simply no ex post facto issue present in this case.[5] The petitioner's incarceration has not been lengthened.

Finally, as to the petitioner's claim that trial counsel was ineffective for misdvising him, this claims fails. (Pet'r's Mem. Opp. Summ. J. Mot. at 6.) The petitioner contends that he pleaded guilty "with the understanding that all then existing laws and prison programs in effect would be available to him including the benefits of the laws allowing work credits pursuant to the 1981 amended parole statute. S.C. Code Ann. § 24-21-610 (1981)." (Pet. Attach. at 3.) The petitioner raised this issue in his prior habeas action.

Parole eligibility calculations, while perhaps useful to defendants in determining whether they wish to exercise their right to jury trial or enter a plea agreement, need not be disclosed to defendants contemplating a plea agreement. <u>Strader v. Garrison</u>, 611 F.2d 61, 63 (4th Cir. 1979)(holding "[o]rdinarily, parole eligibility is such an indirect and collateral consequence, of

---

[5]The respondent contends that the petitioner's failure to appeal a 2006 decision of the ALC which dealt with his ex post facto and due process claims constitutes a procedural bar to the petitioner raising the same claims in this action regarding his 2007 denial of parole. The petitioner alleges he is raising new claims related solely to the handling of his 2007 parole hearing. Because the undersigned concludes that the petitioner is not entitled to any review of his 2007 denial of parole, it is unnecessary to determine if the petitioner is procedurally barred based on his failure to appeal his 2006 action which raised similar issues regarding earlier parole hearings.

which a defendant need not be specifically advised by the court or counsel before entering a plea of guilty.")  Deficient performance arises only when counsel misinforms a defendant about parole eligibility and a defendant relies upon the misinformation.  *Id*. at 65.  There is absolutely no testimony in the record that petitioner inquired about parole and counsel gave him misinformation and further, as noted above, there was no substantive change in the parole eligibility law which affected the petitioner.  In any event, trial counsel is not expected to be clairvoyant.  *See* Gilmore v. State, 445 S.E.2d 454 (S.C. 1994) (holding attorney is not required to be clairvoyant or anticipate changes in the law which were not in existence at time of trial), *overruled on other grounds by* Brightman v. State, 336 S.C. 348, 520 S.E.2d 614 (1999). Furthermore, the petitioner has not demonstrated any prejudice under the facts of this case.  Accordingly, these claims are without merit and should be dismissed.

**Ground Five**

In Ground Five, the petitioner alleges what appears to be a claim for denial of access to the courts.  As set out above, the petitioner alleges he "was prevented from timely filing because of unlawful governmental interference with [his] access to the courts" citing Lewis v. Casey, 518 U.S. 343 (1996).

A claim as to constitutional violations relating to prison procedures which do not affect the length of a sentence or a claim for damages relating to conditions of confinement are properly brought as a civil rights action rather than a habeas action.  Todd v. Baskerville, 712 F.2d 70 (4th Cir. 1983).  A petition for habeas relief is not the appropriate vehicle for the denial of access claim raised by the petitioner as it relates to the conditions of his confinement. Kane v. Garcia, 546 U.S. 9, 10 (2005); *see also*  Moore v. Hamidullah, 2007 WL 1462208 (D.S.C. 2007).

17

In any event, the petitioner has failed to state a denial of access claim. The right of access imposes an affirmative duty on prison officials to assist inmates in preparing and filing legal papers, either by establishing an adequate law library or by providing adequate assistance from persons trained in the law. Bounds v. Smith, 430 U.S. 817, 828 (1977). In Lewis, the Supreme Court held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation. 518 U.S. at 349. This requirement can be satisfied by demonstrating that a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access. *Id.* at 352-53. The petitioner has not specifically explained how he has been denied access to the court, nor has he shown any actual injury, as required by Lewis. Additionally, under the Prison Litigation Reform Act ("PLRA"), a prisoner bringing an action "with respect to prison conditions" under 42 U.S.C. § 1983 must first exhaust all available administrative remedies, which the petitioner has not shown he has done.

To the extent that the petitioner is alleging this claim as a ground to establish equitable tolling (Pet'r's Mem. Opp. Summ. J. Mot. at 8), such an argument is unnecessary as the undersigned has not found any grounds in this habeas action barred by the statute of limitations or procedurally barred. In any event, delays due to seeking legal advice, and related allegations of inadequate prison law libraries have consistently been held not to constitute "extraordinary circumstances" which warrant the application of equitable tolling. Bilodeau v. Angelone, 39 F.Supp.2d 652, 659 (E.D.Va.1999) (refusing to excuse defendant's delay in order to seek legal assistance because "[defendant] has no right to legal representation in habeas proceedings"). *See also* Payne v. Rushton, C.A. No. 2:04-23351-TLW-RSC (D.S.C. Feb. 13, 2006) (denying defendant's request for equitable tolling for late filing because law library's failure to provide revised federal habeas filing deadlines

did not "constitute 'extraordinary circumstances'"). Accordingly, the this claim is also without merit and should be dismissed.

## IV. CONCLUSION

Based on the foregoing, it is recommended that respondent's motion for summary judgment (document # 32) be GRANTED and petitioner's petition for Writ of Habeas Corpus be denied and dismissed without an evidentiary hearing.

FURTHER, if the District Court Judge adopts this report, it is recommended that the petitioner's motions for an evidentiary hearing (document # 52) and for a copy of a transcript (document # 53) be DENIED as moot.

                                           Respectfully submitted,

                                           s/Thomas E. Rogers, III
                                           Thomas E. Rogers, III
                                           United States Magistrate Judge

April 3, 2008
Florence, South Carolina

        **The parties' attention is directed to the important notice on the next page.**